UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JUDY A. TWEED )
 )
v. ) NO. 2:12-CV-413
 )
KING PHARMACEUTICALS, INC., *ET AL.* )

**REPORT AND RECOMMENDATION**

This is an ERISA case in which the plaintiff claims that she was denied benefits under her employer's employment severance plan, and that the denial was arbitrary and capricious. Both parties have filed motions for judgment as a matter of law which the district judge has referred to the magistrate judge for a report and recommendation.

On February 28, 2011, King Pharmaceuticals, Inc., was acquired by Pfizer, Inc. At the time of the acquisition, plaintiff was an employee of King Pharmaceuticals.

King Pharmaceuticals had a severance plan[1] in which plaintiff was a participant-beneficiary. King Pharmaceuticals was the Plan Administrator. That severance plan provided benefits to a participating employee who was terminated from her employment with King Pharmaceuticals so long as that termination was without cause and not initiated by the employee herself by her voluntary resignation, retirement, disability, or death.

It is tacitly acknowledged that Pfizer's acquisition of King Pharmaceuticals had no

---

[1] Amended and Restated King Pharmaceuticals, Inc., Severance Plan: Tier II, doc. 20-2, pp. 81 *et seq*.

effect upon the applicability of the severance plan to plaintiff or any of the other employees of King Pharmaceuticals. Pfizer is the successor Plan Administrator by virtue of its acquisition of King Pharmaceuticals. Both the plan and Pfizer, Inc., concede that plaintiff was a beneficiary of the severance plan and eligible to receive severance benefits, assuming she satisfied all the criteria for obtaining those benefits.

The severance plan is a welfare plan within the meaning of the Employment Retirement Income Security Act, 29 U.S.C. § 101, *et seq*. Section 9 of the Plan provides that the administrator "shall have the sole, absolute and final discretionary authority to determine eligibility for Plan benefits and to construe the terms of the Plan, *including making factual determinations*." [2] The Plan's grant to the administrator of this discretionary authority determines the scope of this court's review of the administrator's denial of benefits:

> [When a] plan expressly grants the administrator authority to determine eligibility for benefits, as well as over administrative decisions such as whether to treat the record as closed, we review the administrator's decision to deny benefits using "the highly deferential arbitrary and capricious standard of review." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996); *see Firestone Tire & Rubber Co. V. Bruce*, 489 U.S. 101, 115, 109 S.C. 948, 103 LED.2d 80 (1989). This standard "is the least demanding form of judicial review of administrative action.... When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Perry v. United Food & Commercial Workers Dist. Unions* 405 & 42, 64 F.3d 238, 241 (6th Cir. 1995) (citations and internal quotations marks omitted). Thus, the standard requires that the decision "be upheld it if is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Baker v. United Mine Works of America Health & Retirement Funds*, 929 F.2d 1140 (6th cir. 1991).
>
> *Gillian v. Health source Provident Administrators, Inc*. 152 F.3d 514, 520 (6th Cir., 1998).

---

[2] Doc. 20-2, p. 96, emphasis supplied.

Section 3(q) of the Plan defines a "qualifying separation" as a cessation of an employee's employment with the employer as one either initiated by the employer without cause, or as one initiated by the employee "for Good Reason." It further says that a qualifying separation does not include a separation initiated by the employer for cause; or initiated by the employee's voluntary resignation, retirement, death or disability; or preceding or following the employee's acceptance or failure to accept Qualified Employment.[3]

The Administrator denied plaintiff's application for severance benefits on the basis that she voluntarily resigned her employment.[4] Plaintiff appealed that decision to Pfizer's Administrative Committee; that body ultimately affirmed the denial of benefits on the same basis, and (apparently) for the additional reason she was offered a permanent position which she refused.[5]

Plaintiff concedes that she did *not* satisfy the criteria for receiving severance benefits as the plan was written, since she voluntarily terminated her employment with Pfizer, Inc. It is plaintiff's argument, however, that 37 other former King Pharmaceutical employees were in exactly the same posture as was she, i.e., they voluntarily terminated their employment, yet nevertheless the administrator of the Severance Plan granted them severance benefits. On this basis, she claims that Pfizer's denial to her of benefits was arbitrary and capricious. She has also filed her affidavit in which she flatly asserts that she

---

[3] Doc. 20-2, p. 88.

[4] Doc. 20-2, p. 72.

[5] Doc. 20-2, p. 138.

3

was never offered a permanent position with Pfizer.

In addition to her argument that Pfizer's decision to deny her benefits was arbitrary and capricious, she also argues that the administrative committee breached its fiduciary duty to her by failing to adequately investigate her assertion that the 37 other employees received severance benefits notwithstanding they were not entitled to them. Defendant argues that plaintiff never made this assertion in her complaint, as a result of which she may not now belatedly raise it in her dispositive motion. Pfizer also contends that a claim for fiduciary duty may not be raised simultaneously with a claim for a denial of benefits.[6]

Plaintiff's contention that the administrative committee breached its fiduciary duty to her need not be separately addressed, since that argument effectively is subsumed by plaintiff's argument that the committee's decision was arbitrary and capricious. In other words, the claim of a breach of fiduciary duty is but another way of claiming that the decision of the committee was arbitrary and capricious because the committee failed to adequately investigate plaintiff's allegation.[7]

It is plaintiff's argument that there is little documentation in the administrative record to support Pfizer's decision that the circumstances of the 37 other employees were different from plaintiff's circumstances. This court is constrained to agree that the record is extremely sparse. The bulk of the administrative record consists of e-mail strings from Pfizer's representative to various individuals which direct them to investigate and report concerning

---

[6] *See*, Memorandum, Doc. 31, p. 2-4.

[7] This conclusion is buttressed by plaintiff's reply brief, Doc. 33.

4

the circumstances of those 37 individuals. The e-mails themselves reveal little or no useful information. The only real documentation, or "evidence," in the administrative record are the minutes of the March 29, 2012, administrative committee meeting that considered Ms. Tweed's appeal of the denial of her benefits. Due to its brevity, not to mention its importance to the decision of this court, it is reproduced in its entirety:

> Next, Kevin Gonzalez presented three appeals under the King Pharmaceuticals Severance Pay Plan: Tier II (the "King Plan"). The first appeal was by Judy Tweed. [Footnote omitted]. In her appeal letter, Ms. Tweed concedes that she voluntarily terminated her employment and, therefore, is not eligible for severance benefits under the King Plan. However, she claims that other King colleagues who voluntarily terminated were paid severance in violation of the King Plan and that, therefore, she too should be paid severance. She names 37 such colleagues in an attachment to her appeal letter.
>
> Mr. Gonzalez informed the Committee that a review of the circumstances surrounding the termination of these 37 colleagues was made. He told the Committee that the first 20 colleagues on Ms. Tweed's list (Jim Elrod to Kelley Warra-Wolleat) all were involuntary terminations whose jobs were eliminated on Day One based on business assessments. Similarly, none of the remaining 17 colleagues on Ms. Tweed's list voluntarily resigned their job as she did. In all cases, their jobs were eliminated by the Company; some asked to exit earlier than their scheduled termination dates because they had found employment elsewhere or for other personal reasons. They were allowed to do so without losing their eligibility for severance benefits based on the Company's practice of permitting early exits where the business determined that a colleague's services were no longer needed because their job duties had already been transitioned to others or there was little or no work remaining to be done and any remaining responsibilities could easily be moved to others without any detriment to the business.
>
> Mr. Gonzalez stated that Ms. Tweed's circumstances were very different. At the time of her voluntary resignation, Ms. Tweed's circumstances were very different. At the time of her voluntary resignation, Ms. Tweed was working in a 24-month transitional role and had significant duties and responsibilities to perform which were necessary to the business. When she informed the Company that she had found other employment and asked if she could exit early, the Company could not accommodate her request because it needed to retain her for business reasons. Rather, the business

5

offered her a permanent position, which she declined.

Based on all these facts and the terms of the King Plan, Mr. Gonzalez recommended that the Committee deny Ms. Tweed's appeal. After some discussion, the Committee agreed and denied ms. Tweed's appeal.[8]

The following questions are raised:

(1) Was the committee's reliance upon Mr. Gonzalez' report "the result of a deliberate principled reasoning process?"

(2) Is Gonzalez' report "substantial evidence" to support the committee's decision?

If each of these questions can be answered in the affirmative, then the administrative committee's decision was neither arbitrary or capricious.

The only reasonable inference that can be drawn from the minutes of the administrative committee is that Gonzalez was privy to the results of the investigations regarding the 37 other employees. Obviously, the committee was confident in his opinion and accepted it. The court understands plaintiff's and her attorney's frustration regarding their lack of knowledge about Gonzalez' identity, or the means he used to acquire the information he imparted to the committee. But that frustration notwithstanding (some of which this court shares), such is the stuff of ERISA cases. This isn't a case of the court "rubber stamping" the decision of the administrator, but it is a matter of deferring to the procedures and process of the administrator in ferreting out the information. Limited, as court's are, to the administrative record as the universe of proof, the Court must conclude that

---

[8] Doc. 20-2, p. 174.

6

the Committee's reliance on Mr. Gonzales' report was "the result of a deliberate, principled reasoning process." The Court certainly understands that the plaintiff, due to her position as "Director of Benefits and Wellness" for King Pharmaceuticals, was privy to information on all of the other employees subject to the plan. However, the record demonstrates that the Committee took her allegations seriously, investigated them, and acted upon them. That is what plan administrators, not courts, do under ERISA, for better or worse.

As for whether the report of Gonzalez was "substantial evidence," the Court must recognize that it related directly to the Committee's investigation of the plaintiff's appeal and to its determination of whether or not she was entitled to benefits because other noncomplying employees had already been deemed to be so entitled. It may be terse. It may raise other factual questions. But in the context of ERISA, this Court concludes it was substantial.

It is therefore respectfully recommended that the plaintiff's Motion [Doc. 21] be DENIED, and that the defendant's Motion [Doc. 24] be GRANTED.

SO ORDERED:

      s/ Dennis H. Inman
United States Magistrate Judge